## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

CARMELLE GEORGES,

      Plaintiff,

v.

SHERIFF GREGORY TONY, in his
official capacity as Sheriff of
BROWARD COUNTY;
ALEXANDER SUDMAN, individually;
JESSICA HAMEL, individually;
CHRISTOPHER GONZALEZ,
individually; JEREMIAH COOPER,
individually; DARRELL WILLIAMS,
individually; JESSE ELROD,
individually; DARNELL
HERNANDEZ, individually; and
ROLANDO ABREU, individually;

      Defendants.

Case No.:

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **CARMELLE GEORGES**, (hereinafter "Plaintiff" or "Ms. Georges") brings this

action seeking monetary damages and costs against Defendants and alleges the following:

### NATURE OF THE ACTION

1. This is an action for damages and costs for the deprivation of Ms. Georges' rights secured

   by the Fourth and Fourteenth Amendment to the United States Constitution, as well as

   claims under Florida law.

### JURISDICTION AND VENUE

2. Ms. Georges invokes the jurisdiction of this Court pursuant to 42 U.S.C. §§1983, 1985,

   and 1988.

3. As to the federal claims herein, Ms. Georges further invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§1331 and 1343.

4. As to the state law claims herein, Ms. Georges invokes the jurisdiction of this Court pursuant to 28 U.S.C. §1367. Supplemental jurisdiction and joinder of parties for additional state law claims in this Court is proper pursuant to 28 U.S.C. §1367(a) because they are so related to the clams in this action for which the Court has original jurisdiction, that they form part of the same case or controversy.

5. As to the state law claims herein, Ms. Georges further invokes the tort laws of Florida.

6. Venue is appropriate in this judicial district under 28 U.S.C. §1391 because the events that give rise to this Complaint occurred in this district.

## PARTIES

### *Plaintiff Carmelle Georges*

7. Plaintiff, Carmelle Georges, is an adult resident of Broward County, Florida, and a citizen of the United States.

### *Broward Sheriff's Office*

8. At all times material hereto, Defendant, Gregory Tony, in his Official Capacity as Sheriff of Broward County (hereinafter "Broward Sheriff's Office"), was located in Broward County, Florida, and was a political subdivision of the State of Florida and of Broward County.

### *Alexander Sudman*

9. At all times material hereto, Defendant, Alexander Sudman, (hereinafter "Deputy Sudman") was a sworn law enforcement officer of the Broward Sheriff's Office.

10. At all times material hereto, Deputy Sudman acted under color of Florida state law.

11. Deputy Sudman is being sued in his individual capacity.

*Jessica Hamel*

12. At all times material hereto, Defendant, Jessica Hamel, (hereinafter "Deputy Hamel") was a sworn law enforcement officer of the Broward Sheriff's Office.

13. At all times material hereto, Deputy Hamel acted under color of Florida state law.

14. Deputy Hamel is being personally sued in her individual capacity.

*Christopher Gonzalez*

15. At all times material hereto, Defendant, Christopher Gonzalez, (hereinafter "Deputy Gonzalez") was a sworn law enforcement officer of the Broward Sheriff's Office.

16. At all times material hereto, Deputy Gonzalez acted under color of Florida state law.

17. Deputy Gonzalez is being sued in his individual capacity.

*Jeremiah Cooper*

18. At all times material hereto, Defendant, Jeremiah Cooper, (hereinafter "Sergeant Cooper") was a sworn law enforcement officer of the Broward Sheriff's Office.

19. At all times material hereto, Sergeant Cooper acted under color of Florida state law.

20. Sergeant Cooper is being sued in his individual capacity.

*Darrell Williams*

21. At all times material hereto, Defendant, Darrell Williams, (hereinafter "Deputy Williams") was a sworn law enforcement officer of the Broward Sheriff's Office.

22. At all times material hereto, Deputy Williams acted under color of Florida state law.

23. Deputy Williams is being sued in his individual capacity.

*Jesse Elrod*

24. At all times material hereto, Defendant, Jesse Elrod, (hereinafter "Deputy Elrod") was a sworn law enforcement officer of the Broward Sheriff's Office.

25. At all times material hereto, Deputy Elrod acted under color of Florida state law.

26. Deputy Elrod is being sued in his individual capacity.

### *Darnell Hernandez*

27. At all times material hereto, Defendant, Darnell Hernandez, (hereinafter "Deputy Hernandez") was a sworn law enforcement officer of the Broward Sheriff's Office.

28. At all times material hereto, Deputy Hernandez acted under color of Florida state law.

29. Deputy Hernandez is being sued in his individual capacity.

### *Rolando Abreu*

30. At all times material hereto, Defendant, Rolando Abreu, (hereinafter "Deputy Abreu") was a sworn law enforcement officer of the Broward Sheriff's Office.

31. At all times material hereto, Deputy Abreu acted under color of Florida state law.

32. Deputy Abreu is being sued in his individual capacity.

### SATISFACTION OF PREFILING REQUIREMENTS

33. The Plaintiff has satisfied all necessary prefiling requirements to establish Florida tort law claims having submitted notice to the Broward Sheriff's Office in accordance with Fla. Stat. §768.28.

### GENERAL ALLEGATIONS

### *Ms. Georges' Residence & Ms. Georges' Bedroom*

34. At all times material hereto, Ms. Georges permanently resided at 4710 NW 2nd Way, Pompano Beach, FL 33064 (hereinafter the "Residence" or the "House").

35. At all times material hereto, Ms. Georges slept in, resided at, or otherwise occupied a personal bedroom within the above-listed Residence (hereinafter "Ms. Georges' Bedroom" or the "Bedroom").

36. At all times material hereto, Ms. Georges had an expectation of privacy at her Residence and a constitutional right to be free from warrantless searches, warrantless seizures, or warrantless entry.

37. At all times material hereto, Ms. Georges had an expectation of privacy in her Bedroom and a constitutional right to be free from warrantless searches, warrantless seizures, or warrantless entry.

### *First Warrantless Entry Inside Ms. Georges' Residence*

38. On December 29, 2018 Deputy Sudman and Deputy Hamel responded to Ms. Georges' Residence in reference to an alleged misuse of the 911 system.

39. Deputy Sudman and Deputy Hamel both entered Ms. Georges' Residence without a warrant.

40. Once inside the Residence, Deputy Sudman and Deputy Hamel encountered Ms. Georges.

41. Deputy Sudman and Deputy Hamel interacted with Ms. Georges for a period of over 10 minutes.

42. Deputy Sudman and Deputy Hamel observed that Ms. Georges was not in danger and that no present emergency existed.

43. Upon encountering Deputy Sudman and Deputy Hamel, Ms. Georges **assertively and repeatedly instructed the deputies to leave her Residence**.

44. Ms. Georges continued to command Deputy Sudman and Deputy Hamel to get out of her House. **Ms. Georges gave multiple loud commands for the deputies to leave the House**, including but not limited to, "please leave", and, "please leave the house."

45. In violation of her constitutional rights, Deputy Sudman and Deputy Hamel initially **ignored Ms. Georges' commands and remained inside her Residence** for a period of several minutes.

46. After several minutes, Deputy Sudman and Deputy Hamel eventually exited the Residence.

### *Second Warrantless Entry Inside Ms. Georges' Residence*

47. Deputy Hamel spoke on the phone with Sergeant Cooper who was her direct supervisor.

48. At all times material hereto, Sergeant Cooper was also the direct supervisor of the other defendant deputies.

49. Sergeant Cooper gave Deputy Hamel and Deputy Sudman permission to arrest Ms. Georges without probable cause.

50. Sergeant Cooper gave Deputy Hamel and Deputy Sudman permission to arrest Ms. Georges without a warrant for an alleged misdemeanor that did not occur in their presence contrary to Florida's Misdemeanor Arrest Rule. See Fla. Stat. §901.15.

51. Sergeant Cooper gave Deputy Hamel and Deputy Sudman permission to re-enter Ms. Georges' Residence without a warrant, without consent, without exigent circumstances, and without a constitutional or legal basis.

52. Subsequently, Deputy Hamel and Deputy Sudman re-entered Ms. Georges' Residence without a warrant.

53. Upon seeing the deputies reenter her Residence, Ms. Georges once again assertively commanded the deputies to "**please leave the house!**". Nonetheless, Deputy Hamel and Deputy Sudman disobeyed Ms. Georges' explicit commands and remained inside the Residence without a warrant.

54. ***Warrantless Entry Inside Ms. Georges' Bedroom***Next, Deputy Sudman barged inside Ms. Georges' Bedroom without a warrant.

55. Deputy Sudman did not have exigent circumstances to enter Ms. Georges' Bedroom without a warrant.

56. Deputy Sudman knew that he did not have exigent circumstances to enter Ms. Georges' Bedroom without a warrant. During the subsequent criminal case, Deputy Sudman even admitted under oath that no exigent circumstances existed. *Deposition of Deputy Sudman*: Page 106, Lines 6 -21; Page 56, Line 21-Page 58, Line 24 (December 20, 2019).

57. Likewise, Deputy Hamel barged inside Ms. Georges' Bedroom without a warrant.

58. Likewise, Deputy Hamel also did not have exigent circumstances to enter Ms. Georges' Bedroom without a warrant.

59. Deputy Hamel knew that she did not have exigent circumstances to enter Ms. Georges' Bedroom without a warrant. During the subsequent criminal case, Deputy Hamel even admitted under oath that she did not have exigent circumstances to enter Ms. Georges' Bedroom without a warrant:

> Q: Okay. And in this case when you went inside her bedroom, did you have exigent circumstances?
>
> A: No.

*Deposition of Deputy Hamel*: Page 12, Lines 12-14 (July 8, 2019)

### *Unlawful Arrest/False Arrest*

60. Deputy Sudman was not aware of any facts, or in possession of any evidence, indicating that Ms. Georges had violated Florida's statute against misuse of the 911 system. Moreover, Deputy Sudman was not aware of any facts, or in possession of any evidence, indicating that Ms. Georges had violated any criminal law. Therefore, Deputy Sudman unlawfully arrested Ms. Georges without probable cause or even arguable probable cause.

61. Not only did Deputy Sudman not have probable cause to arrest Ms. Georges for misuse of the 911 system, but furthermore, Ms. Georges' alleged misuse of the 911 system occurred outside of Deputy Sudman's presence. Misuse of the 911 system is not one of the statutory

exceptions for which a law enforcement officer may conduct an arrest for a misdemeanor that did not occur in his or her presence. Therefore, Deputy Sudman unlawfully arrested Ms. Georges in violation of Florida's Misdemeanor Arrest Rule. See Fla. Stat. §901.15.

62. Deputy Hamel was not aware of any facts, or in possession of any evidence, indicating that Ms. Georges had violated Florida's statute against misuse of the 911 system. Moreover, Deputy Hamel was not aware of any facts, or in possession of any evidence, indicating that Ms. Georges had violated any criminal law. Therefore, Deputy Hamel unlawfully arrested Ms. Georges without probable cause or even arguable probable cause.

63. Not only did Deputy Hamel not have probable cause to arrest Ms. Georges for misuse of the 911 system, but furthermore, Ms. Georges' alleged misuse of the 911 system occurred outside of Deputy Hamel's presence. Misuse of the 911 system is not one of the statutory exceptions for which a law enforcement officer may conduct an arrest for a misdemeanor that did not occur in his or her presence. Therefore, Deputy Hamel unlawfully arrested Ms. Georges in violation of Florida's Misdemeanor Arrest Rule. See Fla. Stat. §901.15.

64. Deputy Hamel  testified under oath in the subsequent criminal case that she did not observe Ms. Georges commit any misdemeanor in her presence and that there was no legal basis to arrest Ms. Georges:

> Q: In this case did Ms. Georges commit any misdemeanor in your presence?
>
> A: In my presence, no.
>
> Q: Okay. So, in summary you would agree that given the absence of exigent circumstances and given that there was no misdemeanor in your presence, that there was not a legal basis to arrest Ms. Georges, would you agree with that?
>
> A: I'll agree with you.

*Deposition of Deputy Hamel*: Page 114, Lines 8-16 (July 8, 2019)

***Burglary, Battery, and Excessive Force***

65. Deputy Sudman struck, touched, grabbed, and battered Ms. Georges against her will.

66. Subsequently, Deputy Sudman, with the assistance of other defendants pulled down or caused Ms. Georges' pants to fall. Next, Deputy Sudman, with the assistance of other defendants proceeded to drag Ms. Georges out of her residence  with her underwear exposed, as her pants had been pulled down over and past her buttocks.

67. Therefore, Deputy Sudman committed a battery against Ms. Georges. Given the unlawful, warrantless entry, Deputy Sudman also committed a burglary against Ms. Georges. Consequently, Deputy Sudman committed the crime known as "Burglary with Battery", contrary to Fla. Stat §810.02(2), which is a first-degree felony punishable by life.

68. In the subsequent criminal case, Deputy Sudman specifically admitted under oath that on December 29, 2018 he committed a crime against Ms. Georges. Deputy Sudman specifically admitted under oath that he committed the crimes of a) Burglary, b) Battery, and c) "Burglary with Battery", colloquially known as a "Burg/Batt".

69. Deputy Sudman  testified as follows to committing crimes against Ms. Georges:

> Q: And unfortunately, technically, you also committed a burglary as well?
>
> A: Correct.

*Deposition of Deputy Sudman*: Page 136, Lines 22-24; (December 20, 2019)

> Q: And also, you would agree that unfortunately you committed a battery as well, correct?
>
> [Objections omitted for clarity]
>
> A: I guess technically, yes.
>
> Q: Okay. So that means that you would you have committed the crime of burg/batt, burglary with battery, correct?
>
> A: Correct.

*Deposition of Deputy Sudman*: Page 137, Lines 6-16; (December 20, 2019)

Q: You would agree then that unfortunately you committed a crime against Carmelle Georges, correct?

A: Correct.

*Deposition of Deputy Sudman*: Page 137, Lines 21-23; (December 20, 2019)

70. Deputy Hamel also struck, touched, grabbed, and battered Ms. Georges against her will.

71. Subsequently, Deputy Hamel, with the assistance of other defendants pulled down or caused Ms. Georges' pants to fall. Next, Deputy Hamel, with the assistance of other defendants proceeded to help drag Ms. Georges out of her residence with her underwear exposed, as her pants had been pulled down over and past her buttocks.

72. Therefore, Deputy Hamel committed a battery against Ms. Georges. Given the unlawful, warrantless entry, Deputy Hamel also committed a burglary against Ms. Georges. Consequently, Deputy Hamel committed the crime known as "Burglary with Battery", contrary to Fla. Stat §810.02(2), which is a first-degree felony punishable by life.

73. In the subsequent criminal case, Deputy Hamel specifically  testified under oath that on December 29, 2018 she committed a crime against Ms. Georges. Deputy Hamel specifically admitted under oath that she committed the crime of "battery" while unlawfully entering or remaining inside Ms. Georges' Residence. This means she also committed the crime of Burglary and the crime of "Burglary with Battery", colloquially known as "Burg/Batt".

74. Deputy Hamel  testified as follows to committing a crime against Ms. Georges:

Q: All right. So you would agree that you did not have a legal basis to enter the house, correct?

A: Yeah, correct.

Q: And you would agree that you had no legal basis to enter Ms. Georges' bedroom, is that correct?

A: Correct.

Q: And you would agree that you had no legal basis to arrest Ms. Georges, correct?

A: She didn't meet the misdemeanor exceptions, correct.

Q: Excuse me?

A: Yes, correct.

*Deposition of Deputy Hamel*: Page 129, Lines 5-16 (July 8, 2019)

Q: In this case, and I hate to phrase it like this, but did you commit –

A: correct.

Q: -- a battery by touching Ms. Georges?

A: Correct.

Q: Okay. I'm sorry?

A: Yes, correct.

*Deposition of Deputy Hamel*: Page 130, Lines 7-13 (July 8, 2019)

Q: Okay. And I hate to say it, but, you know, truthfully in essence, unfortunately, I know it wasn't your intention, but you did commit a crime, correct?

A: Correct.

*Deposition of Deputy Hamel*: Page 131, Lines 11-14 (July 8, 2019)

75. During the course of the above-described events, Deputy Gonzalez responded to Ms. Georges' Residence, entered the House without a warrant, and also entered her bedroom without a warrant.

76. Once inside Ms. Georges' Bedroom, Deputy Gonzalez punched Ms. Georges against her will. Deputy Gonzalez' punch was captured on body camera.

77. Consequently, Deputy Gonzalez committed a battery against Ms. Georges.

***Additional Unlawful Entry By Broward Sheriff's Deputies***

78. During the course of the above-described events, Defendant Sergeant Cooper unlawfully entered Ms. Georges' House without a warrant, without consent, and without exigent circumstances.

79. During the course of the above-described events, Defendant Deputy Williams unlawfully entered Ms. Georges' House without a warrant, without consent, and without exigent circumstances.

80. During the course of the above-described events, Defendant Deputy Elrod unlawfully entered Ms. Georges' House without a warrant, without consent, and without exigent circumstances.

81. During the course of the above-described events, Defendant Deputy Hernandez unlawfully entered Ms. Georges' House without a warrant, without consent, and without exigent circumstances.

82. During the course of the above-described events, Defendant Deputy Abreu unlawfully entered Ms. Georges' House without a warrant, without consent, and without exigent circumstances.

***Malicious Prosecution***

83. Ms. Georges was taken to the county jail against her will.

84. Deputy Sudman and Deputy Hamel instituted criminal proceedings against Ms. Georges by effecting the above-described false arrest, executing affidavits wherein they knowingly provided false information intended to establish probable cause, and/or transporting Ms. Georges to the county jail against her will.

85. As a result of Deputy Sudman and Deputy Hamel's false arrest and as a result of Deputy Sudman and Deputy Hamel's false accusations, Ms. Georges was criminally charged by Information as follows:

Count I – Battery on a Law Enforcement Officer upon Deputy Hamel

Count II – Battery on a Law Enforcement Officer upon Deputy Sudman

Count III – Resisting with Violence against Deputy Sudman and Deputy Hamel

86. Ms. Georges was not guilty of these false criminal charges.

87. The above-listed criminal charges were ultimately dropped by the State Attorney's Office.

### *Punitive Conduct*

88. Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Deputy Cooper, Deputy Williams, Deputy Elrod, Deputy Hernandez, and Deputy Abreu acted with intentional misconduct in that they had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, intentionally pursued the above-described course of conduct, resulting in injury and damages to Ms. Georges.

89. The conduct of the Broward Sheriff's Office, Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Deputy Cooper, Deputy Williams, Deputy Elrod, Deputy Hernandez, and Deputy Abreu was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges.

### *Ms. Georges' Damages & Violation of Her Rights*

90. As a result of the above-described facts, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

## COUNT I – NEGLIGENCE/NEGLIGENT SUPERVISION AGAINST BROWARD SHERIFF'S OFFICE
(Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

91. At all times material to this action, Defendant Broward Sheriff's Office, with deliberate indifference, created and had in effect unreasonable policies or customs that were a direct and proximate cause of the unconstitutional violation of Ms. Georges' Fourth Amendment Rights.

92. At all times material to this action, Defendant Broward Sheriff's Office, with deliberate indifference, created and had in effect unreasonable policies or customs that were a direct and proximate cause of the unconstitutional excessive force that was used against Ms. Georges.

93. The negligent polices or customs resulted in the Broward Sheriff's Office engaging in systemic procedures or conduct which deprived citizens, including Ms. Georges, of their constitutional rights. Such policies or customs include the following:

    a. The failure to properly train and supervise sheriff's deputies, including the defendant deputies listed within this Complaint, in the appropriate and lawful methods of law enforcement, investigation, and arrest, including, but not limited to:

        i. The proper use of force;

        ii. The proper method of investigation;

        iii. The proper method of obtaining an arrest warrant for alleged misdemeanor crimes;

        iv. The proper method of obtaining a search warrant;

v. The necessity of not entering a residence without a warrant, or consent, or exigent circumstances.

b. The failure to properly train or supervise its sheriff's deputies, including the defendant deputies listed within this Complaint, which had the effect of allowing deputies to violate the Fourth Amendment with impunity, including illegal entry into a residence, false arrest, and false imprisonment.

c. The failure to properly train or supervise its sheriff's deputies, including the defendant deputies listed within this Complaint, which had the effect of allowing deputies to use excessive force.

d. The failure to properly train or supervise its sheriff's deputies, including the defendant deputies listed within this Complaint, had the effect of allowing deputies to conduct false arrests and malicious prosecutions.

e. The failure to properly investigate complaints made by citizens against the sheriff's office.

f. The failure to maintain policies or customs which assured the protection of the public from improper negligent and/or illegal police conduct.

g. The failure to take proper and necessary remedial action against improper police conduct occurred so as to assure that such improper police conduct would not occur in the future.

94. The conduct alleged herein constituted an officially adopted policy or custom which had the effect of minimizing the consequences of police misconduct and, as a result, caused the deprivation of Ms. Georges' rights.

95. The actions and failures of the defendant, Broward Sheriff's Office, deprived Ms. Georges of her rights guaranteed by the Constitution of the United States and protected by 42 U.S.C.

§1983 deprived her of the following constitutionally guaranteed rights and privileges, inter alia:

   a. The right and privilege not to be deprived of liberty without due process and equal protection of the law;

   b. The right and privilege to be free from unlawful attack upon the physical integrity of her person;

   c. The right and privilege to be secure in her person;

   d. The right and privilege not to be subjected to unwarranted and illegal punishment without due process of law;

   e. The right and privilege to be immune from illegal assault and/or battery by any person exercising the authority of the Broward Sheriff's Office, its agents, and the State of Florida under color of law;

   f. The right to be free from physical abuse, coercion, and/or intimidation;

   g. The right to be free from warrantless searches or warrantless entry into her Residence;

   h. The right to be free from warrantless searches or warrantless entry into her Bedroom;

   i. The right to be free from warrantless seizures.

96. As a direct and proximate result of the above-listed policies, failures, and customs, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Sudman for actual and compensatory damages together with costs and demands trial by jury.

## COUNT II – NEGLIGENT RETENTION AGAINST BROWARD SHERIFF'S OFFICE
### (State Tort Claim)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

97. Throughout the course of the employment of Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Sergeant Cooper, Deputy Williams, Deputy Elrod, Deputy Hernandez, and Deputy Abreu, the Broward Sheriff's Office became aware, or should have become aware, of problems with these employees that indicated their unfitness.

98. Some or all of these deputies had prior complaints for excessive force or violating citizens' constitutional rights.

99. Nonetheless, the Broward Sheriff's Office failed to take further action, including investigation, discharge, or reassignment.

100.     As a direct and proximate result of the Broward Sheriff's Office negligent retention of the above-listed employees, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Sudman for actual and compensatory damages together with costs and demands trial by jury.

## COUNT III – UNLAWFUL ENTRY INTO RESIDENCE AGAINST DEPUTY ALEXANDER SUDMAN
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

101.     On or about December 29, 2018, in the absence of consent, or exigent circumstances, Ms. Georges had a well-established Fourth Amendment right under the

United States Constitution to not be subjected to a warrantless search or warrantless entry into her Residence.

102.     On or about December 29, 2018, Deputy Sudman entered Ms. Georges' Residence without a warrant.

103.     On or about December 29, 2018, Deputy Sudman was instructed by Ms. Georges to leave her Residence. Ms. Georges made it abundantly clear to Deputy Sudman that she was not welcome inside her Residence and that Ms. Georges did not consent to Deputy Sudman entering or remaining inside her Residence.

104.     Deputy Sudman disregarded Ms. Georges' clear commands and remained inside Ms. Georges' Residence for an extended period of time **without a warrant.**

105.     Deputy Sudman disregarded Ms. Georges' clear commands and remained inside Ms. Georges' Residence for an extended period of time **without Ms. Georges' consent.**

106.     Deputy Sudman disregarded Ms. Georges' clear commands and remained inside Ms. Georges' Residence for an extended period of time **without exigent circumstances.**

107.     Deputy Sudman disregarded Ms. Georges' clear commands and later re-entered Ms. Georges Residence for a second time, again without a warrant, again without consent, and again without exigent circumstances.

108.     Deputy Sudman **knew** that entering or remaining inside of a residence without either A) a warrant, or B) consent, or C) exigent circumstances, constitutes a violation of a clearly established constitutional right.

109.     On December 20, 2019, Deputy Sudman testified that he knew that entering or remaining in a residence without A) a warrant, or B) consent, or C) exigent circumstances, constitutes a violation of a clearly established constitutional right:

Q: You would agree that a person has expectation of privacy in their home, correct?

A: Correct.

Q: And you would agree that is a well-established right, that you have the right not to have law enforcement enter a residence unless they have a legal basis, correct?

A: Correct, unless they consent.

*Deposition of Deputy Sudman*: Page 46, Lines 12-19 (December 20, 2019)

Q: To enter a residence, you would agree with me that you need either A) a warrant, B) consent, or C) exigent circumstances, correct?

A: Yes.

Q: Okay. And in the absence of one of those three things, either A) a warrant, B) consent, or C) exigent circumstances, you would agree that a law enforcement officer cannot enter a residence, correct?

A: Yes

*Deposition of Deputy Sudman*: Page 50, Lines 11-19 (December 20, 2019)

110.     By entering or remaining inside Ms. Georges' Residence without A) a warrant, or B) consent, or C) exigent circumstances, Deputy Sudman violated Ms. Georges' Fourth Amendment Rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

111.     Deputy Sudman's actions of entering and remaining inside Ms. Georges' House without A) a warrant, or B) consent, or C) exigent circumstances, constitutes an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

112.     Given that Deputy Sudman **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his actions therefore constitute intentional misconduct in that he had actual knowledge of

the wrongfulness of his conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

113.     Given that Deputy Sudman **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his conduct was therefore so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges. Given such grossly negligent conduct Ms. Georges seeks punitive damages.

114.     As a direct and proximate result of Deputy Sudman's violation of Ms. Georges' Fourth Amendment Rights, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Sudman for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT IV – UNLAWFUL ENTRY INTO MS. GEORGES' BEDROOM AGAINST DEPUTY ALEXANDER SUDMAN
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

115.     On or about December 29, 2018, in the absence of consent, or exigent circumstances, Ms. Georges had a well-established Fourth Amendment right under the United States Constitution to not be subjected to a warrantless search or warrantless entry into her Bedroom.

116.     On or about December 29, 2018, while she was inside Ms. Georges' Residence, Deputy Sudman was instructed by Ms. Georges to leave. Ms. Georges made it abundantly clear to Deputy Sudman that she was not welcome inside her Bedroom.

117.     On or about December 29, 2018, Deputy Sudman knew that entering a person's bedroom without A) a warrant, B) consent, or C) exigent circumstances, would violate a **clearly established constitutional right**.

118.     On December 20, 2019, Deputy Sudman testified under oath that given the increased expectation of privacy, any reasonable law enforcement officer would know that a person's bedroom is subject to additional constitutional protection. On December 20, 2019, Deputy Sudman further testified under oath that any reasonable law enforcement officer would know that you cannot enter a person's bedroom without either A) a warrant, B) consent, or C) exigent circumstances:

> Q: You would agree that a person has expectation of privacy in their home, correct?
>
> A: Correct.
>
> Q: And you would agree that is a well-established right, that you have the right not to have law enforcement enter a residence unless they have a legal basis, correct?
>
> A: Correct, unless they consent.
>
> Q: You would agree that a person has even a higher expectation inside their bedroom, correct?
>
> A: Correct.
>
> *Deposition of Deputy Sudman*: Page 46, Lines 12-22 (December 20, 2019)
>
> Q: To enter a residence, you would agree with me that you need either A) a warrant, B) consent, or C) exigent circumstances, correct?
>
> A: Yes.

Q: Okay. And in the absence of one of those three things, either A) a warrant, B) consent, or C) exigent circumstances, you would agree that a law enforcement officer cannot enter a residence, correct?

A: Yes

Q: Same thing with a bedroom, you would agree that you need either A) a warrant, or B) consent, or C) exigent circumstances to enter somebody's bedroom, correct?

A: Yes.

*Deposition of Deputy Sudman*: Page 50, Lines 11-24 (July 8, 2019)

119.     Nonetheless, on or about December 29, 2018, Deputy Sudman entered inside Ms. Georges' Bedroom without a warrant.

120.     Nonetheless, on or about December 29, 2018, Deputy Sudman entered inside Ms. Georges' Bedroom without consent.

121.     Nonetheless, on or about December 29, 2018, Deputy Sudman entered inside Ms. Georges' Bedroom without exigent circumstances.

122.     By entering Ms. Georges' Bedroom without A) a warrant, or B) consent, or C) exigent circumstances, Deputy Sudman violated Ms. Georges' Fourth Amendment Rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

123.     Deputy Sudman's actions of entering Ms. Georges' Bedroom without A) a warrant, or B) consent, or C) exigent circumstances, constitutes an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

124.     Given that Deputy Sudman **knew** he was violating a **well-established right** by entering without A) a warrant, or B) consent, or C) exigent circumstances, his actions therefore constitute intentional misconduct in that he had actual knowledge of the wrongfulness of his conduct and the high probability that injury or damage to Ms. Georges

would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

125.     Given that Deputy Sudman **knew** he was violating a **well-established right** by entering without A) a warrant, or B) consent, or C) exigent circumstances, his conduct was therefore so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges. Given such grossly negligent conduct Ms. Georges seeks punitive damages.

126.     As a direct and proximate result of Deputy Sudman's violation of Ms. Georges' Fourth Amendment Rights, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Sudman for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT V – EXCESSIVE FORCE AGAINST DEPUTY ALEXANDER SUDMAN
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

127.     Being free from being struck, touched, grabbed, or battered by government agents is a clearly established right protected by the Fourth Amendment of the United States Constitution.

128.     On or about December 29, 2018, Deputy Sudman struck, touched, grabbed, and battered Ms. Georges against her will.

129.    Subsequently, Deputy Sudman, with the assistance of other defendants pulled down or caused Ms. Georges' pants to fall. Next, Deputy Sudman, with the assistance of other defendants proceeded to drag Ms. Georges out of her residence with her underwear exposed as her pants had been pulled down over and past her buttocks.

130.    Deputy Sudman's actions of physically attacking Ms. Georges as described above (by striking, touching, grabbing, battering or dragging Ms. Georges) constituted an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

131.    Notably, Ms. Georges did not consent to being struck, touched, grabbed, battered, or dragged.

132.    Notably, Deputy Sudman had no probable cause to make an arrest.

133.    Notably, Deputy Sudman had no legal basis to touch Ms. Georges.

134.    Given the lack of any legal basis to touch or arrest Ms. Georges, *any* force used by Deputy Sudman was per se excessive.

135.    As a direct and proximate result of Deputy Sudman's violation of Ms. Georges' Fourth Amendment Rights, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Sudman for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT VI – FALSE ARREST AGAINST DEPUTY ALEXANDER SUDMAN
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

136.    On December 29, 2018, Deputy Sudman arrested Ms. Georges.

137.    On or about December 29, 2018, Deputy Sudman was not aware of any facts, or in possession of any evidence, indicating that Ms. Georges had violated any criminal law.

138.    Therefore, Deputy Sudman unlawfully arrested Ms. Georges without probable cause or even arguable probable cause.

139.    Not only did Deputy Sudman not have probable cause to arrest Ms. Georges, but furthermore, the alleged crime for which Deputy Sudman initially arrested Ms. Georges' - misuse of the 911 system - occurred outside of Deputy Sudman's presence. Misuse of the 911 system is not one of the statutory exceptions for which a law enforcement officer may conduct an arrest for a misdemeanor that did not occur in his or her presence. Therefore, Deputy Sudman unlawfully arrested Ms. Georges in violation of Florida's Misdemeanor Arrest Rule. See Fla. Stat. §901.15.

140.    Remarkably, on December 20, 2019, Deputy Sudman confessed under oath that on or about December 29, 2018 he committed a crime, more particularly a forcible felony, against Ms. Georges, to-wit: Burglary with Battery.

141.    Notably, Deputy Sudman also arrested Ms. Georges for battery on a law enforcement officer and resisting with violence, alleging that Ms. Georges struck him. However, this allegation was false. Ms. Georges did not batter Deputy Sudman or any law enforcement officer.

142.    Alternatively, even if Ms. Georges did batter Deputy Sudman or a law enforcement officer it would have been a **justified** use of force under Section 776.012, Florida Statutes

(2018) **given that by his own admission, Deputy Sudman was actively committing a forcible felony against Ms. Georges**.

143. Therefore, regardless of whether or not Ms. Georges struck Deputy Sudman, (she did not) there was no probable cause or arguable probable cause to arrest her.

144. Consequently, Deputy Sudman's arrest of Ms. Georges was unlawful and without probable cause or arguable probable cause.

145. Deputy Sudman's unlawful arrest constitutes an unlawful seizure under the Fourth Amendment to the United States Constitution.

146. As a direct and proximate result of Deputy Sudman's violation of Ms. Georges' Fourth Amendment Rights, and as a direct and proximate result of Deputy Sudman's false arrest, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Sudman for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT VII – MALICIOUS PROSECUTION AGAINST DEPUTY ALEXANDER SUDMAN
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

147. On or about December 29, 2018, Deputy Sudman instituted criminal proceedings against Ms. Georges by handcuffing Ms. Georges and removing her from her House, and transporting her, or procuring her transport, to the county jail.

148. On or about December 29, 2018, Deputy Sudman instituted criminal proceedings against Ms. Georges by drafting and executing a fraudulent police report alleging that she

had committed multiple crimes which she did not commit (including misuse of 911 system, battery on law enforcement officer, and resisting with violence).

149. On or about December 29, 2018, Deputy Sudman instituted criminal proceedings against Ms. Georges by forwarding his fraudulent police report to the State Attorney's Office.

150. Deputy Sudman instituted criminal proceedings against Ms. Georges without probable cause or arguable probable cause.

151. As a result of Deputy Sudman's actions Ms. Georges was formally charged by Information with three crimes:

Count I – Battery on a Law Enforcement Officer upon Deputy Hamel

Count II – Battery on a Law Enforcement Officer upon Deputy Sudman

Count III – Resisting with Violence against Deputy Sudman and Deputy Hamel

152. As a result of Deputy Sudman's actions, Ms. Georges faced the stress and pressures of prosecution including the risk of imprisonment.

153. Deputy Sudman's commencement of fraudulent criminal proceedings against Ms. Georges constitutes an unlawful seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

154. As a direct and proximate result of Deputy Sudman's violation of Ms. Georges' Fourth Amendment Rights, and as a direct and proximate result of Deputy Sudman's malicious prosecution, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Sudman for actual and compensatory damages; for punitive damages; and prays for an

order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT VIII – BATTERY CLAIM AGAINST DEPUTY ALEXANDER SUDMAN
### (State Tort Claim)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

155.     On or about December 29, 2018, Deputy Sudman intentionally struck, touched, grabbed, and battered Ms. Georges.

156.     Deputy Sudman struck, touched, grabbed, and battered Ms. Georges without legal justification.

157.     Ms. Georges did not consent to Deputy Sudman striking, touching, grabbing, or battering her.

158.     Deputy Sudman's actions constitute a battery against Ms. Georges.

159.     Moreover, on December 20, 2019 Deputy Sudman confessed under oath that he committed a battery against Ms. Georges.

160.     On December 20, 2019 Deputy Sudman testified under oath as follows:

Q: And also, you would agree that unfortunately you committed a battery as well, correct?

[Objections omitted for clarity]

A: I guess technically, yes.

Q: Okay. So that means that you would you have committed the crime of burg/batt, burglary with battery, correct?

A: Correct.

*Deposition of Deputy Sudman*: Page 137, Lines 6-16; (December 20, 2019)

Q: You would agree then that unfortunately you committed a crime against Carmelle Georges, correct?

A: Correct.

Page **28** of **71**

*Deposition of Deputy Sudman*: Page 137, Lines 21-23; (December 20, 2019)

161.     At all times material hereto, Deputy Sudman acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property so as to subject himself to personal liability for his actions.

162.     Futher, as a law enforcement officer, Deputy Sudman had actual knowledge of what conduct constitutes a battery. Therefore, his actions in battering Ms. Georges was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges  so as to constitute intentional misconduct in that he had actual knowledge of the wrongfulness of his conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

163.     As a direct and proximate result of Deputy Sudman's battery against Ms. Georges, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Sudman for actual and compensatory damages; for punitive damages; and and costs and demands trial by jury.

## COUNT IX – FALSE IMPRISONMENT AGAINST DEPUTY ALEXANDER SUDMAN
### (State Tort Claim)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

164.     On or about December 29, 2018, Deputy Sudman unlawfully detained and restrained Ms. Georges and deprived Ms. Georges of liberty.

165. Deputy Sudman detained and deprived Ms. Georges against her will.

166. Deputy Sudman detained and deprived Ms. Georges of liberty without legal authority and while acting under color of state law.

167. Deputy Sudman's detention was unreasonable and unwarranted under the circumstances.

168. Deputy Sudman's detention was unlawful, unreasonable, and unwarranted in that he did not have probable cause or arguable probable cause to detain Ms. Georges.

169. Deputy Sudman's conduct constitutes the state-law tort of false imprisonment.

170. At all times material hereto, Deputy Sudman acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property so as to subject himself to personal liability for his actions.

171. As a direct and proximate result of Deputy Sudman's false imprisonment against Ms. Georges, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Sudman for actual and compensatory damages; for punitive damages; and costs and demands trial by jury.

### COUNT X – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST DEPUTY ALEXANDER SUDMAN
**(State Tort Claim)**

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

172. Deputy Sudman entered and remained inside Ms. Georges' House A) without a warrant, B) without consent, and C) without exigent circumstances.

173.    Deputy Sudman barged inside Ms. Georges' personal Bedroom A) without a warrant, B) without consent, and C) without exigent circumstances.

174.    Deputy Sudman battered Ms. Georges inside her Bedroom.

175.    Deputy Sudman pulled down or caused Ms. Georges' pants to fall.

176.    Deputy Sudman dragged Ms. Georges out of her House with her underwear exposed as her pants had been pulled down over and past her buttocks.

177.    Deputy Sudman arrested Ms. Georges; Ms. Georges went to jail and served time in jail.

178.    Prior to this incident Ms. Georges had never been to jail.

179.    Deputy Sudman committed all of these acts without probable cause, arguable probable cause, or any other legal basis.

180.    By his own admission Deputy Sudman committed a forcible felony against Ms. Georges in her own House.

181.    These acts by Deputy Sudman were intentional or reckless.

182.    Deputy Sudman knew or should have known that his conduct would likely result in emotional distress.

183.    The above-described conduct of Deputy Sudman was outrageous. The above-described conduct of Deputy Sudman went beyond the bounds of decency, was odious, and intolerable in a civilized community.

184.    At all times material hereto, Deputy Sudman acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property so as to subject himself to personal liability for his actions.

185.    The above-described conduct of Deputy Sudman caused severe emotional distress to Ms. Georges.

186. As a direct and proximate result of Deputy Sudman's conduct against Ms. Georges, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Sudman for actual and compensatory damages; for punitive damages; and costs and demands trial by jury.

## COUNT XI – UNLAWFUL ENTRY INTO RESIDENCE AGAINST DEPUTY JESSICA HAMEL
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

187. On or about December 29, 2018, in the absence of consent, or exigent circumstances, Ms. Georges had a well-established Fourth Amendment right under the United States Constitution to not be subjected to a warrantless search or warrantless entry into her Residence.

188. On or about December 29, 2018, Deputy Hamel entered Ms. Georges' Residence without a warrant.

189. On or about December 29, 2018, Deputy Hamel was instructed by Ms. Georges to leave her Residence. Ms. Georges made it abundantly clear to Deputy Hamel that she was not welcome inside her Residence and that Ms. Georges did not consent to Deputy Hamel entering or remaining inside her Residence.

190. Deputy Hamel disregarded Ms. Georges' clear commands and remained inside Ms. Georges' Residence for an extended period of time **without a warrant.**

191. Deputy Hamel disregarded Ms. Georges' clear commands and remained inside Ms. Georges' Residence for an extended period of time **without Ms. Georges' consent.**

192.     Deputy Hamel disregarded Ms. Georges' clear commands and remained inside Ms. Georges' Residence for an extended period of time **without exigent circumstances.**

193.     Deputy Hamel disregarded Ms. Georges' clear commands and later re-entered Ms. Georges Residence for a second time, again without a warrant, again without consent, and again without exigent circumstances.

194.     Deputy Hamel knew that entering or remaining inside of a residence without either A) a warrant, or B) consent, or C) exigent circumstances, constitutes a violation of a clearly established constitutional right.

195.     On July 8, 2019, Deputy Hamel testified under oath that she **knew** that entering or remaining in a residence without A) a warrant, or B) consent, or C) exigent circumstances, constitutes a violation of a **clearly established constitutional right**:

> Q: You would agree with me that under 4th Amendment law any reasonable officer would know that you could not enter a house without either, A) a warrant; B) consent; or C) exigent circumstances, is that fair to say?
>
> A: Yes.
>
> Q: You would agree with me that any reasonable officer in the profession would know this, right?
>
> A: Yes.
>
> Q: Okay. Meaning it's not an obscure concept or anything like that, right?
>
> A: No, we're all on the same page.
>
> *Deposition of Deputy Hamel*: Page 106, Lines 7-18 (July 8, 2019)
>
> Q: Okay. You would agree with me that it is a well established right to not have law enforcement come inside the house unless they A) [have] a warrant; B) consent; or C) exigent circumstances, right?
>
> A: Yes.
>
> *Deposition of Deputy Hamel*: Page 107, Lines 4-8 (July 8, 2019)

196. By entering or remaining inside Ms. Georges' Residence without A) a warrant, or B) consent, or C) exigent circumstances, Deputy Hamel violated Ms. Georges' Fourth Amendment Rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

197. Deputy Hamel's actions of entering and remaining inside Ms. Georges' House without A) a warrant, or B) consent, or C) exigent circumstances, constitutes an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

198. Given that Deputy Hamel **knew** she was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, her actions therefore constitute intentional misconduct in that she had actual knowledge of the wrongfulness of her conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

199. Given that Deputy Hamel **knew** she was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, her conduct was therefore so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges. Given such grossly negligent conduct Ms. Georges seeks punitive damages.

200. As a direct and proximate result of Deputy Hamel's violation of Ms. Georges' Fourth Amendment Rights, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Hamel for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

**COUNT XII – UNLAWFUL ENTRY INTO MS. GEORGES' BEDROOM AGAINST DEPUTY JESSICA HAMEL**
**(Pursuant to 42 U.S.C. § 1983)**

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

201.	On or about December 29, 2018, in the absence of consent, or exigent circumstances, Ms. Georges had a well-established Fourth Amendment right under the United States Constitution to not be subjected to a warrantless search or warrantless entry into her Bedroom.

202.	On or about December 29, 2018, while she was inside Ms. Georges' Residence, Deputy Hamel was instructed by Ms. Georges to leave. Ms. Georges made it abundantly clear to Deputy Hamel that she was not welcome inside her Bedroom.

203.	On or about December 29, 2018, Deputy Hamel knew that entering a person's bedroom without A) a warrant, B) consent, or C) exigent circumstances, would violate a **clearly established constitutional right**.

204.	On July 8, 2019, Deputy Hamel testified under oath that given the increased expectation of privacy, any reasonable law enforcement officer would know that a person's bedroom is subject to additional constitutional protection. On July 8, 2019 Deputy Hamel further testified under oath that any reasonable law enforcement officer would know that you cannot enter a person's bedroom without either A) a warrant, B) consent, or C) exigent circumstances:

Q: And in the context of 4th Amendment law, you would agree with me that any reasonable law enforcement officer would know that you have an expectation of privacy inside of a residence, correct?

A: Yes

Q: And you would agree with me that any reasonable law enforcement officer would know that you have an even more increased expectation of privacy inside of your bedroom under 4th Amendment law, correct?

A: Yes.

*Deposition of Deputy Hamel*: Page 105, Line 22 to Page 106, Line 6 (July 8, 2019)

Q: As far as entering the bedroom, you would also agree that any reasonable officer would know that you cannot enter the bedroom without either, A) a warrant; B) consent; or C) exigent circumstances, correct?

A: Yes.

*Deposition of Deputy Hamel*: Page 106, Line 19 to Page 106, Line 24 (July 8, 2019)

205. Nonetheless, on or about December 29, 2018, Deputy Hamel entered inside Ms. Georges' Bedroom without a warrant.

206. Nonetheless, on or about December 29, 2018, Deputy Hamel entered inside Ms. Georges' Bedroom without consent.

207. Nonetheless, on or about December 29, 2018, Deputy Hamel entered inside Ms. Georges' Bedroom without exigent circumstances.

208. By entering Ms. Georges' Bedroom without A) a warrant, or B) consent, or C) exigent circumstances, Deputy Hamel violated Ms. Georges' Fourth Amendment Rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

209. Deputy Hamel's actions of entering Ms. Georges' Bedroom without A) a warrant, or B) consent, or C) exigent circumstances, constitutes an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

210.     Given that Deputy Hamel **knew** she was violating a **well-established right** by entering without A) a warrant, or B) consent, or C) exigent circumstances, her actions therefore constitute intentional misconduct in that she had actual knowledge of the wrongfulness of her conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

211.     Given that Deputy Hamel **knew** she was violating a **well-established right** by entering without A) a warrant, or B) consent, or C) exigent circumstances, her conduct was therefore so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges. Given such grossly negligent conduct Ms. Georges seeks punitive damages.

212.     As a direct and proximate result of Deputy Hamel's violation of Ms. Georges' Fourth Amendment Rights, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Hamel for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XIII – EXCESSIVE FORCE AGAINST DEPUTY JESSICA HAMEL
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

213.     Being free from being struck, touched, grabbed, or battered by government agents is a clearly established right protected by the Fourth Amendment of the United States Constitution.

214.     On or about December 29, 2018, Deputy Hamel struck, touched, grabbed, and battered Ms. Georges against her will.

215.     Subsequently, Deputy Hamel, with the assistance of other defendants pulled down or caused Ms. Georges' pants to fall. Next, Deputy Hamel, with the assistance of other defendants proceeded to remove Ms. Georges out of her residence  with her underwear exposed as her pants had been pulled down over and past her buttocks.

216.     Deputy Hamel's actions of physically attacking Ms. Georges as described above (by striking, touching, grabbing, battering or removing Ms. Georges) constituted an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

217.     Notably, Ms. Georges did not consent to being struck, touched, grabbed, battered, or dragged.

218.     Notably, Deputy Hamel had no probable cause to make an arrest.

219.     Notably, Deputy Hamel had no legal basis to touch Ms. Georges.

220.     Given the lack of any legal basis to touch or arrest Ms. Georges, *any* force used by Deputy Hamel was per se excessive.

221.     As a direct and proximate result of Deputy Hamel's violation of Ms. Georges' Fourth Amendment Rights, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Hamel for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

### COUNT XIV – FALSE ARREST AGAINST DEPUTY JESSICA HAMEL
#### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

222.    On December 29, 2018, Deputy Hamel arrested Ms. Georges.

223.    On or about December 29, 2018, Deputy Hamel was not aware of any facts, or in possession of any evidence, indicating that Ms. Georges had violated any criminal law.

224.    Therefore, Deputy Hamel unlawfully arrested Ms. Georges without probable cause or even arguable probable cause.

225.    Not only did Deputy Hamel not have probable cause to arrest Ms. Georges, but furthermore, the alleged crime for which Deputy Hamel initially arrested Ms. Georges' - misuse of the 911 system - occurred outside of Deputy Hamel's presence. Misuse of the 911 system is not one of the statutory exceptions for which a law enforcement officer may conduct an arrest for a misdemeanor that did not occur in his or her presence. Therefore, Deputy Hamel unlawfully arrested Ms. Georges in violation of Florida's Misdemeanor Arrest Rule. See Fla. Stat. §901.15.

226.    Remarkably, on July 8, 2019, Deputy Hamel confessed under oath that on or about December 29, 2018 she committed a crime, more particularly a forcible felony, against Ms. Georges, to-wit: Burglary with Battery.

227.    Notably, Deputy Hamel also arrested Ms. Georges for battery on a law enforcement officer and resisting with violence, alleging that Ms. Georges struck her. However, this

allegation was false. Ms. Georges did not batter Deputy Hamel or any law enforcement officer.

228.     Alternatively, even if Ms. Georges did batter Deputy Hamel or a law enforcement officer it would have been a **justified** use of force under Section 776.012, Florida Statutes (2018) **given that by her own admission, Deputy Hamel was actively committing a forcible felony against Ms. Georges**.

229.     Therefore, regardless of whether or not Ms. Georges struck Deputy Hamel, (she did not) there was no probable cause or arguable probable cause to arrest her.

230.     Consequently, Deputy Hamel's arrest of Ms. Georges was unlawful and without probable cause or arguable probable cause.

231.     Deputy Hamel's unlawful arrest constitutes an unlawful seizure under the Fourth Amendment to the United States Constitution.

232.     As a direct and proximate result of Deputy Hamel's violation of Ms. Georges' Fourth Amendment Rights, and as a direct and proximate result of Deputy Hamel's false arrest, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Hamel for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

### COUNT XV – MALICIOUS PROSECUTION AGAINST DEPUTY JESSICA HAMEL
**(Pursuant to 42 U.S.C. § 1983)**

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

233. On or about December 29, 2018, Deputy Hamel instituted criminal proceedings against Ms. Georges by handcuffing Ms. Georges and removing her from her House, and transporting her, or procuring her transport, to the county jail.

234. On or about December 29, 2018, Deputy Hamel instituted criminal proceedings against Ms. Georges by drafting and executing a fraudulent police report alleging that she had committed multiple crimes which she did not commit (including misuse of 911 system, battery on law enforcement officer, and resisting with violence).

235. On or about December 29, 2018, Deputy Hamel instituted criminal proceedings against Ms. Georges by forwarding her fraudulent police report to the State Attorney's Office.

236. Deputy Hamel instituted criminal proceedings against Ms. Georges without probable cause or arguable probable cause.

237. As a result of Deputy Hamel's actions, Ms. Georges was formally charged by Information with three crimes:

Count I – Battery on a Law Enforcement Officer upon Deputy Hamel

Count II – Battery on a Law Enforcement Officer upon Deputy Sudman

Count III – Resisting with Violence against Deputy Sudman and Deputy Hamel

238. As a result of Deputy Hamel's actions, Ms. Georges faced the stress and pressures of prosecution including the risk of imprisonment.

239. Deputy Hamel's commencement of fraudulent criminal proceedings against Ms. Georges constitutes an unlawful seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

240. As a direct and proximate result of Deputy Hamel's violation of Ms. Georges' Fourth Amendment Rights, and as a direct and proximate result of Deputy Hamel's

malicious prosecution, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Hamel for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XVI – BATTERY CLAIM AGAINST DEPUTY JESSICA HAMEL
### (State Tort Claim)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

241.    On or about December 29, 2018, Deputy Hamel intentionally struck, touched, grabbed, and battered Ms. Georges.

242.    Deputy Hamel struck, touched, grabbed, and battered Ms. Georges without legal justification.

243.    Ms. Georges did not consent to Deputy Hamel striking, touching, grabbing, or battering her.

244.    Deputy Hamel's actions constitute a battery against Ms. Georges.

245.    Moreover, on July 8, 2019, Deputy Hamel confessed under oath that she committed a battery against Ms. Georges.

246.    On July 8, 2019 Deputy Hamel testified under oath as follows:

Q: Now, you obviously being a trained law enforcement officer, you know what a battery is, correct?

A: Yes

*Deposition of Deputy Hamel*: Page 122, Lines 19-21; (July 8, 2019)

Q: In this case, and I hate to phrase it like this, but did you commit –

A: correct.

Q: -- a battery by touching Ms. Georges?

A: Correct.

Q: Okay. I'm sorry?

A: Yes, correct.

*Deposition of Deputy Hamel*: Page 130, Lines 7-13 (July 8, 2019)

Q: Okay. And I hate to say it, but, you know, truthfully in essence, unfortunately, I know it wasn't your intention, but you did commit a crime, correct?

A: Correct.

*Deposition of Deputy Hamel*: Page 131, Lines 11-14 (July 8, 2019)

247. At all times material hereto, Deputy Sudman acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property so as to subject herself to personal liability for her actions.

248. Further, as a law enforcement officer, Deputy Hamel had actual knowledge of what conduct constitutes a battery. Therefore, her actions in battering Ms. Georges was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges so as to constitute intentional misconduct in that she had actual knowledge of the wrongfulness of her conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

249.     As a direct and proximate result of Deputy Hamel's battery against Ms. Georges, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Hamel for actual and compensatory damages; for punitive damages; and costs and demands trial by jury.

## COUNT XVII – FALSE IMPRISONMENT AGAINST DEPUTY JESSICA HAMEL
### (State Tort Claim)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

250.     On or about December 29, 2018 Deputy Hamel unlawfully detained and restrained Ms. Georges and deprived Ms. Georges of liberty.

251.     Deputy Hamel detained and deprived Ms. Georges against her will.

252.     Deputy Hamel detained and deprived Ms. Georges of liberty without legal authority and while acting under color of state law.

253.     Deputy Hamel's detention was unreasonable and unwarranted under the circumstances.

254.     Deputy Hamel's detention was unlawful, unreasonable, and unwarranted in that he did not have probable cause or arguable probable cause to detain Ms. Georges.

255.     Deputy Hamel's conduct constitutes the state-law tort of false imprisonment.

256.     At all times material hereto, Deputy Sudman acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property so as to subject herself to personal liability for her actions.

257.     As a direct and proximate result of Deputy Hamel's false imprisonment against Ms. Georges, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Hamel for actual and compensatory damages; for punitive damages; and costs and demands trial by jury.

## COUNT XVIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST DEPUTY JESSICA HAMEL
### (State Tort Claim)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

258.     Deputy Hamel entered and remained inside Ms. Georges' House A) without a warrant, B) without consent, and C) without exigent circumstances.

259.     Deputy Hamel barged inside Ms. Georges' personal Bedroom A) without a warrant, B) without consent, and C) without exigent circumstances.

260.     Deputy Hamel battered Ms. Georges inside her Bedroom.

261.     Deputy Hamel pulled down or caused Ms. Georges' pants to fall.

262.     Deputy Hamel dragged Ms. Georges out of her House  with her underwear exposed as her pants had been pulled down over and past her buttocks.

263.     Deputy Hamel arrested Ms. Georges; Ms. Georges went to jail and served time in jail.

264.     Prior to this incident, Ms. Georges had never been to jail.

265.     Deputy Hamel committed all of these acts without probable cause, arguable probable cause, or any other legal basis.

266.	By her own admission, Deputy Hamel committed a forcible felony against Ms. Georges in her own House.

267.	These acts by Deputy Hamel were intentional or reckless.

268.	Deputy Hamel knew or should have known that her conduct would likely result in emotional distress.

269.	The above-described conduct of Deputy Hamel was outrageous. The above-described conduct of Deputy Hamel went beyond the bounds of decency, was odious, and intolerable in a civilized community.

270.	At all times material hereto, Deputy Hamel acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property so as to subject himself to personal liability for his actions.

271.	The above-described conduct of Deputy Hamel caused severe emotional distress to Ms. Georges.

272.	As a direct and proximate result of Deputy Hamel's conduct against Ms. Georges, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Hamel for actual and compensatory damages; for punitive damages; and costs and demands trial by jury.

### COUNT XIX – UNLAWFUL ENTRY CLAIM AGAINST DEPUTY CHRISTOPHER GONZALEZ
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

273.	On or about December 29, 2018, in the absence of consent, or exigent circumstances, Ms. Georges had a well-established Fourth Amendment right under the

United States Constitution to not be subjected to a warrantless search or warrantless entry into her Residence.

274.     On or about December 29, 2018, Deputy Gonzalez entered Ms. Georges' Residence **without a warrant.**

275.     On or about December 29, 2018, Deputy Gonzalez entered Ms. Georges' Residence **without consent.**

276.     On or about December 29, 2018, Deputy Gonzalez entered Ms. Georges' Residence **without exigent circumstances.**

277.     Deputy Gonzalez **knew** that entering a residence without either A) a warrant, or B) consent, or C) exigent circumstances, constitutes a violation of a clearly established constitutional right.

278.     By entering Ms. Georges' Residence without A) a warrant, or B) consent, or C) exigent circumstances, Deputy Gonzalez violated Ms. Georges' Fourth Amendment Rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

279.     Deputy Gonzalez' actions of entering Ms. Georges' House without A) a warrant, or B) consent, or C) exigent circumstances, constitutes an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

280.     Given that Deputy Gonzalez **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his actions therefore constitute intentional misconduct in that he had actual knowledge of the wrongfulness of his conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

281.     Given that Deputy Gonzalez **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his conduct was therefore so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges. Given such grossly negligent conduct Ms. Georges seeks punitive damages.

282.     As a direct and proximate result of Deputy Gonzalez's violation of Ms. Georges' Fourth Amendment Rights, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Gonzalez for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XX – EXCESSIVE FORCE CLAIM AGAINST DEPUTY CHRISTOPHER GONZALEZ
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

283.     Being free from being struck, touched, grabbed, or battered by government agents is a clearly established right protected by the Fourth Amendment of the United States Constitution.

284.     On or about December 29, 2018, Deputy Gonzalez struck, touched, grabbed, and battered Ms. Georges against her will.

285.     On or about December 29, 2018, Deputy Gonzalez **punched Ms. Georges.**

286.     Subsequently, Deputy Gonzalez, with the assistance of other defendants pulled down or caused Ms. Georges' pants to fall. Next, Deputy Gonzalez, with the assistance of

other defendants proceeded to drag Ms. Georges out of her residence with her underwear exposed as her pants had been pulled down over and past her buttocks.

287.     Deputy Gonzalez' actions of physically attacking Ms. Georges as described above (by striking, touching, grabbing, battering or dragging Ms. Georges) constituted an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

288.     Notably, Ms. Georges did not consent to being struck, touched, grabbed, battered, or dragged.

289.     Notably, Deputy Gonzalez had no probable cause to make an arrest.

290.     Notably, Deputy Gonzalez had no legal basis to touch Ms. Georges.

291.     Given the lack of any legal basis to touch or arrest Ms. Georges, *any* force used by Deputy Gonzalez was per se excessive.

292.     As a direct and proximate result of Deputy Gonzalez' violation of Ms. Georges' Fourth Amendment Rights, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Gonzalez for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XXI – BATTERY CLAIM AGAINST DEPUTY CHRISTOPHER GONZALEZ
### (State Tort Claim)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

293.     On or about December 29, 2018, Deputy Gonzalez intentionally struck, touched, grabbed, and battered Ms. Georges.

294.     Deputy Gonzalez struck, touched, grabbed, and battered Ms. Georges without legal justification.

295.     On or about December 29, 2018, Deputy Gonzalez **punched Ms. Georges.**

296.     Ms. Georges did not consent to Deputy Gonzalez striking, touching, grabbing, or battering her.

297.     Ms. Georges did not consent to Deputy Gonzalez punching her.

298.     Deputy Gonzalez' actions constitute a battery against Ms. Georges.

299.     At all times material hereto, Deputy Gonzalez acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property so as to subject himself to personal liability for his actions.

300.     Further, as a law enforcement officer, Deputy Gonzalez had actual knowledge of what conduct constitutes a battery. Therefore, his actions in battering and punching Ms. Georges was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges  so as to constitute intentional misconduct in that he had actual knowledge of the wrongfulness of his conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

301.     As a direct and proximate result of Deputy Gonzalez' battery against Ms. Georges, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Gonzalez for actual and compensatory damages; for punitive damages; and costs and demands trial by jury.

## COUNT XXII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST DEPUTY CHRISTOPHER GONZALEZ
### (State Tort Claim)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

302.     Deputy Gonzalez entered Ms. Georges' House A) without a warrant, B) without consent, and C) without exigent circumstances.

303.     Deputy Gonzalez barged inside Ms. Georges' personal Bedroom A) without a warrant, B) without consent, and C) without exigent circumstances.

304.     Deputy Gonzalez battered Ms. Georges inside her Bedroom.

305.     Deputy Gonzalez also **punched** Ms. Georges inside her House.

306.     Deputy Gonzalez pulled down or caused Ms. Georges' pants to fall.

307.     Deputy Gonzalez dragged Ms. Georges out of her House with her underwear exposed as her pants had been pulled down over and past her buttocks.

308.     Deputy Gonzalez assisted in the false arrest of Ms. Georges; Ms. Georges went to jail and served time in jail.

309.     Prior to this incident, Ms. Georges had never been to jail.

310.     Deputy Gonzalez committed all of these acts without probable cause, arguable probable cause, or any other legal basis.

311.     These acts by Deputy Gonzalez were intentional or reckless.

312.     At all times material hereto, Deputy Gonzalez acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property so as to subject himself to personal liability for his actions.

313. Deputy Gonzalez knew or should have known that his conduct would likely result in emotional distress.

314. The above-described conduct of Deputy Gonzalez was outrageous. The above-described conduct of Deputy Gonzalez went beyond the bounds of decency, was odious, and intolerable in a civilized community.

315. The above-described conduct of Deputy Gonzalez caused severe emotional distress to Ms. Georges.

316. As a direct and proximate result of Deputy Gonzalez's conduct against Ms. Georges, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Gonzalez for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XXIII – UNLAWFUL ENTRY CLAIM AGAINST SERGEANT JEREMIAH COOPER
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

317. On or about December 29, 2018, in the absence of consent, or exigent circumstances, Ms. Georges had a well-established Fourth Amendment right under the United States Constitution to not be subjected to a warrantless search or warrantless entry into her Residence.

318. On or about December 29, 2018, Sergeant Cooper entered Ms. Georges' Residence **without a warrant.**

319.     On or about December 29, 2018, Sergeant Cooper entered Ms. Georges' Residence **without consent.**

320.     On or about December 29, 2018, Sergeant Cooper entered Ms. Georges' Residence **without exigent circumstances.**

321.     Sergeant Cooper **knew** that entering a residence without either A) a warrant, or B) consent, or C) exigent circumstances, constitutes a violation of a clearly established constitutional right.

322.     By entering Ms. Georges' Residence without A) a warrant, or B) consent, or C) exigent circumstances, Sergeant Cooper violated Ms. Georges' Fourth Amendment Rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

323.     Sergeant Cooper's actions of entering Ms. Georges' House without A) a warrant, or B) consent, or C) exigent circumstances, constitutes an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

324.     Given that Sergeant Cooper **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his actions therefore constitute intentional misconduct in that he had actual knowledge of the wrongfulness of his conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

325.     Given that Sergeant Cooper **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his conduct was therefore so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges. Given such grossly negligent conduct Ms. Georges seeks punitive damages.

326.     As a direct and proximate result of Sergeant Cooper's violation of Ms. Georges' Fourth Amendment Rights, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Sergeant Cooper for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XXIV – FALSE ARREST AGAINST SERGEANT JEREMIAH COOPER
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

327.     At all times material hereto, Sergeant Cooper was the direct supervisor of Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Deputy Williams, Deputy Elrod, and Deputy Abreu.

328.     At all times material hereto, Sergeant Cooper was **not** aware of any facts, or in possession of any evidence, indicating that Ms. Georges had violated any criminal law.

329.     At no point on or about December 29, 2018, did Sergeant Cooper become aware of any facts, or come to be in possession of any evidence, indicating that Ms. Georges had violated any criminal law.

330.     Despite not being aware of any facts indicating that Ms. Georges had violated any criminal law, and despite not being in possession of any evidence indicating that Ms. Georges had violated any criminal law, Sergeant Cooper nonetheless gave Deputy Hamel permission to arrest Ms. Georges.

331. Sergeant Cooper gave Deputy Hamel and Deputy Sudman permission to arrest Ms. Georges without probable cause or even arguable probable cause.

332. Sergeant Cooper gave Deputy Hamel and Deputy Sudman permission to arrest Ms. Georges without a warrant for an alleged misdemeanor that did not occur in their presence contrary to Florida's Misdemeanor Arrest Rule. See Fla. Stat. §901.15.

333. Sergeant Cooper gave Deputy Hamel and Deputy Sudman permission to re-enter Ms. Georges' Residence without a warrant, without consent, without exigent circumstances, and without a constitutional or legal basis.

334. As a result of Sergeant Cooper's conduct, Ms. Georges was arrested.

335. As a result of Sergeant Cooper's conduct, Ms. Georges' Fourth Amendment rights were violated.

336. As a highly experienced law enforcement officer of many years who had risen to the supervisory rank of Sergeant, Sergeant Cooper had actual knowledge that his conduct would lead to an unlawful warrantless entry and an unlawful warrantless arrest. Therefore, his actions in authorizing or permitting Ms. Georges' arrest constitute intentional misconduct in that he had actual knowledge of the wrongfulness of his conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

337. As a highly experienced law enforcement officer of many years, Sergeant Cooper knew, or should have known, that his conduct in authorizing or permitting a warrantless entry followed by an illegal warrantless arrest would result in a violation of Ms. Georges' Fourth Amendment rights. Therefore, his conduct was so reckless or wanting in care that

it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges. Given such grossly negligent conduct Ms. Georges seeks punitive damages.

338.     As a direct and proximate result of Sergeant Cooper's conduct, and as a direct and proximate result of Sergeant Cooper's gross negligence, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Sergeant Cooper for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XXV – FAILURE TO INTERVENE CLAIM AGAINST SERGEANT JEREMIAH COOPER
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

339.     The law is well-established that "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Byrd v. Clark, 783 F. 2d 1002, 1007 (11th Cir. 1986); see also Anderson v. Branen, 17 F. 3d 552, 557 (2d Cir. 1994) (citations omitted).

340.     Therefore, at all times material hereto, Sergeant Cooper had an affirmative duty to protect the Plaintiff from constitutional violations by fellow officers.

341.     Sergeant Cooper witnessed, permitted, or authorized the unconstitutional conduct of Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Deputy Williams, Deputy Elrod, Deputy Hernandez, and Deputy Abreu.

342.     Sergeant Cooper witnessed, permitted, or authorized the unlawful entries into Ms. Georges' House that were executed by Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Deputy Williams, Deputy Elrod, Deputy Hernandez, and Deputy Abreu.

343.     Sergeant Cooper witnessed, permitted, or authorized the false arrest and malicious prosecution executed by Deputy Sudman and Deputy Hamel.

344.     Sergeant Cooper witnessed, permitted, or authorized the excessive force used on Ms. Georges by Deputy Sudman, Deputy Hamel, and Deputy Gonzalez.

345.     Sergeant Cooper witnessed, permitted, or authorized the batteries committed by Deputy Sudman, Deputy Hamel, and Deputy Gonzalez.

346.     As the supervisor for the deputies involved, Sergeant Cooper had a reasonable opportunity to intervene to stop the fellow officers from attacking Ms. Georges or violating her constitutional rights.

347.     Despite this opportunity, Sergeant Cooper never intervened to prevent, or attempted to prevent, any of the unconstitutional conduct committed by Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Deputy Williams, Deputy Elrod, Deputy Hernandez, and Deputy Abreu.

348.     As a direct and proximate result of Sergeant Cooper's failure to intervene, Ms. Georges' suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Sergeant Cooper for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XXVI – UNLAWFUL ENTRY CLAIM AGAINST DEPUTY DARRELL WILLIAMS
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

349. On or about December 29, 2018, in the absence of consent, or exigent circumstances, Ms. Georges had a well-established Fourth Amendment right under the United States Constitution to not be subjected to a warrantless search or warrantless entry into her Residence.

350. On or about December 29, 2018, Deputy Williams entered Ms. Georges' Residence **without a warrant.**

351. On or about December 29, 2018, Deputy Williams entered Ms. Georges' Residence **without consent.**

352. On or about December 29, 2018, Deputy Williams entered Ms. Georges' Residence **without exigent circumstances.**

353. Deputy Williams **knew** that entering a residence without either A) a warrant, or B) consent, or C) exigent circumstances, constitutes a violation of a clearly established constitutional right.

354. By entering Ms. Georges' Residence without A) a warrant, or B) consent, or C) exigent circumstances, Deputy Williams violated Ms. Georges' Fourth Amendment Rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

355. Deputy Williams' actions of entering Ms. Georges' House without A) a warrant, or B) consent, or C) exigent circumstances, constitutes an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

356.     Given that Deputy Williams **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his actions therefore constitute intentional misconduct in that he had actual knowledge of the wrongfulness of his conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

357.     Given that Deputy Williams **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his conduct was therefore so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges. Given such grossly negligent conduct Ms. Georges seeks punitive damages.

358.     As a direct and proximate result of Deputy Williams' violation of Ms. Georges' Fourth Amendment Rights, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Williams for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XXVII – FAILURE TO INTERVENE CLAIM AGAINST DEPUTY DARRELL WILLIAMS
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

359.     The law is well-established that "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating

Page **59** of **71**

takes place in his presence, the officer is directly liable under Section 1983." Byrd v. Clark, 783 F. 2d 1002, 1007 (11th Cir. 1986); see also Anderson v. Branen, 17 F. 3d 552, 557 (2d Cir. 1994) (citations omitted).

360.     Therefore, at all times material hereto Deputy Williams had an affirmative duty to protect the Plaintiffs from constitutional violations by fellow officers.

361.     Deputy Williams witnessed, permitted, or authorized the unconstitutional conduct of Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Sergeant Cooper, Deputy Elrod, Deputy Hernandez, and Deputy Abreu.

362.     Deputy Williams witnessed, permitted, or authorized the unlawful entries into Ms. Georges' House that were executed by Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Sergeant Cooper, Deputy Elrod, Deputy Hernandez, and Deputy Abreu.

363.     Deputy Williams witnessed, permitted, or authorized the false arrest and malicious prosecution executed by Deputy Sudman and Deputy Hamel.

364.     Deputy Williams witnessed, permitted, or authorized the excessive force used on Ms. Georges by Deputy Sudman, Deputy Hamel, and Deputy Gonzalez.

365.     Deputy Williams witnessed, permitted, or authorized the batteries committed by Deputy Sudman, Deputy Hamel, and Deputy Gonzalez.

366.     Deputy Williams was present and had a reasonable opportunity to intervene to stop the fellow officers from attacking Ms. Georges or violating her constitutional rights.

367.     Despite this opportunity, Deputy Williams never intervened to prevent, or attempted to prevent, any of the unconstitutional conduct committed by Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Sergeant Cooper, Deputy Elrod, Deputy Hernandez, and Deputy Abreu.

368.     As a direct and proximate result of Deputy Williams' failure to intervene, Ms. Georges' suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Williams for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XXVIII – UNLAWFUL ENTRY CLAIM AGAINST DEPUTY JESSE ELROD
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

369.     On or about December 29, 2018, in the absence of consent, or exigent circumstances, Ms. Georges had a well-established Fourth Amendment right under the United States Constitution to not be subjected to a warrantless search or warrantless entry into her Residence.

370.     On or about December 29, 2018, Deputy Elrod entered Ms. Georges' Residence **without a warrant.**

371.     On or about December 29, 2018, Deputy Elrod entered Ms. Georges' Residence **without consent.**

372.     On or about December 29, 2018, Deputy Elrod entered Ms. Georges' Residence **without exigent circumstances.**

373.     Deputy Elrod **knew** that entering a residence without either A) a warrant, or B) consent, or C) exigent circumstances, constitutes a violation of a clearly established constitutional right.

374. By entering Ms. Georges' Residence without A) a warrant, or B) consent, or C) exigent circumstances, Deputy Elrod violated Ms. Georges' Fourth Amendment Rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

375. Deputy Elrod's actions of entering Ms. Georges' House without A) a warrant, or B) consent, or C) exigent circumstances, constitutes an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

376. Given that Deputy Elrod **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his actions therefore constitute intentional misconduct in that he had actual knowledge of the wrongfulness of his conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

377. Given that Deputy Elrod **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his conduct was therefore so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges. Given such grossly negligent conduct Ms. Georges seeks punitive damages.

378. As a direct and proximate result of Deputy Elrod's violation of Ms. Georges' Fourth Amendment Rights, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Elrod for actual and compensatory damages; for punitive damages; and prays for an order

awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

### COUNT XXIX – FAILURE TO INTERVENE CLAIM AGAINST DEPUTY JESSE ELROD
**(Pursuant to 42 U.S.C. § 1983)**

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

379. The law is well-established that "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Byrd v. Clark, 783 F. 2d 1002, 1007 (11th Cir. 1986); see also Anderson v. Branen, 17 F. 3d 552, 557 (2d Cir. 1994) (citations omitted).

380. Therefore, at all times material hereto Deputy Elrod had an affirmative duty to protect the Plaintiffs from constitutional violations by fellow officers.

381. Deputy Elrod witnessed, permitted, or authorized the unconstitutional conduct of Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Sergeant Cooper, Deputy Williams, Deputy Hernandez, and Deputy Abreu.

382. Deputy Elrod witnessed, permitted, or authorized the unlawful entries into Ms. Georges' House that were executed by Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Sergeant Cooper, Deputy Williams, Deputy Hernandez, and Deputy Abreu.

383. Deputy Elrod witnessed, permitted, or authorized the false arrest and malicious prosecution executed by Deputy Sudman and Deputy Hamel.

384. Deputy Elrod witnessed, permitted, or authorized the excessive force used on Ms. Georges by Deputy Sudman, Deputy Hamel, and Deputy Gonzalez.

385. Deputy Elrod witnessed, permitted, or authorized the batteries committed by Deputy Sudman, Deputy Hamel, and Deputy Gonzalez.

386.     Deputy Elrod was present and had a reasonable opportunity to intervene to stop the fellow officers from attacking Ms. Georges or violating her constitutional rights.

387.     Despite this opportunity, Deputy Elrod never intervened to prevent, or attempted to prevent, any of the unconstitutional conduct committed by Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Sergeant Cooper, Deputy Williams, Deputy Hernandez, and Deputy Abreu.

388.     As a direct and proximate result of Deputy Elrod's failure to intervene, Ms. Georges' suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Elrod for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XXX – UNLAWFUL ENTRY CLAIM AGAINST DEPUTY DARNELL HERNANDEZ
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

389.     On or about December 29, 2018, in the absence of consent, or exigent circumstances, Ms. Georges had a well-established Fourth Amendment right under the United States Constitution to not be subjected to a warrantless search or warrantless entry into her Residence.

390.     On or about December 29, 2018, Deputy Hernandez entered Ms. Georges' Residence **without a warrant.**

391.     On or about December 29, 2018, Deputy Hernandez entered Ms. Georges' Residence **without consent.**

392.     On or about December 29, 2018, Deputy Hernandez entered Ms. Georges' Residence **without exigent circumstances.**

393.     Deputy Hernandez **knew** that entering a residence without either A) a warrant, or B) consent, or C) exigent circumstances, constitutes a violation of a clearly established constitutional right.

394.     By entering Ms. Georges' Residence without A) a warrant, or B) consent, or C) exigent circumstances, Deputy Hernandez violated Ms. Georges' Fourth Amendment Rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

395.     Deputy Hernandez' actions of entering Ms. Georges' House without A) a warrant, or B) consent, or C) exigent circumstances, constitutes an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

396.     Given that Deputy Hernandez **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his actions therefore constitute intentional misconduct in that he had actual knowledge of the wrongfulness of his conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

397.     Given that Deputy Hernandez **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his conduct was therefore so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges. Given such grossly negligent conduct Ms. Georges seeks punitive damages.

398.     As a direct and proximate result of Deputy Hernandez' violation of Ms. Georges' Fourth Amendment Rights, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Hernandez for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XXXI – FAILURE TO INTERVENE CLAIM AGAINST DEPUTY DARNELL HERNANDEZ
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

399.     The law is well-established that "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Byrd v. Clark, 783 F. 2d 1002, 1007 (11th Cir. 1986); see also Anderson v. Branen, 17 F. 3d 552, 557 (2d Cir. 1994) (citations omitted).

400.     Therefore, at all times material hereto Deputy Hernandez had an affirmative duty to protect the Plaintiffs from constitutional violations by fellow officers.

401.     Deputy Hernandez witnessed, permitted, or authorized the unconstitutional conduct of Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Sergeant Cooper, Deputy Elrod, Deputy Williams, and Deputy Abreu.

402.     Deputy Hernandez witnessed, permitted, or authorized the unlawful entries into Ms. Georges' House that were executed by Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Sergeant Cooper, Deputy Elrod, Deputy Williams, and Deputy Abreu.

403. Deputy Hernandez witnessed, permitted, or authorized the false arrest and malicious prosecution executed by Deputy Sudman and Deputy Hamel.

404. Deputy Hernandez witnessed, permitted, or authorized the excessive force used on Ms. Georges by Deputy Sudman, Deputy Hamel, and Deputy Gonzalez.

405. Deputy Hernandez witnessed, permitted, or authorized the batteries committed by Deputy Sudman, Deputy Hamel, and Deputy Gonzalez.

406. Deputy Hernandez was present and had a reasonable opportunity to intervene to stop the fellow officers from attacking Ms. Georges or violating her constitutional rights.

407. Despite this opportunity, Deputy Hernandez never intervened to prevent, or attempted to prevent, any of the unconstitutional conduct committed by Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Sergeant Cooper, Deputy Elrod, Deputy Williams, and Deputy Abreu.

408. As a direct and proximate result of Deputy Hernandez' failure to intervene, Ms. Georges' suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Hernandez for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XXXII – UNLAWFUL ENTRY CLAIM AGAINST DEPUTY ROLANDO ABREU
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

409. On or about December 29, 2018, in the absence of consent, or exigent circumstances, Ms. Georges had a well-established Fourth Amendment right under the

United States Constitution to not be subjected to a warrantless search or warrantless entry into her Residence.

410. On or about December 29, 2018, Deputy Abreu entered Ms. Georges' Residence **without a warrant.**

411. On or about December 29, 2018, Deputy Abreu entered Ms. Georges' Residence **without consent.**

412. On or about December 29, 2018, Deputy Abreu entered Ms. Georges' Residence **without exigent circumstances.**

413. Deputy Abreu **knew** that entering a residence without either A) a warrant, or B) consent, or C) exigent circumstances, constitutes a violation of a clearly established constitutional right.

414. By entering Ms. Georges' Residence without A) a warrant, or B) consent, or C) exigent circumstances, Deputy Abreu violated Ms. Georges' Fourth Amendment Rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

415. Deputy Abreu's actions of entering Ms. Georges' House without A) a warrant, or B) consent, or C) exigent circumstances, constitutes an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution.

416. Given that Deputy Abreu **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his actions therefore constitute intentional misconduct in that he had actual knowledge of the wrongfulness of his conduct and the high probability that injury or damage to Ms. Georges would result, and despite that knowledge, nonetheless intentionally pursued such conduct. Given the intentional misconduct Ms. Georges seeks punitive damages.

417.    Given that Deputy Abreu **knew** he was violating a **well-established right** by entering or remaining without A) a warrant, or B) consent, or C) exigent circumstances, his conduct was therefore so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, and rights of Ms. Georges. Given such grossly negligent conduct Ms. Georges seeks punitive damages.

418.    As a direct and proximate result of Deputy Abreu's violation of Ms. Georges' Fourth Amendment Rights, Ms. Georges suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Abreu for actual and compensatory damages; for punitive damages; and prays for an order awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## COUNT XXXIII – FAILURE TO INTERVENE CLAIM AGAINST ROLANDO ABREU
### (Pursuant to 42 U.S.C. § 1983)

Ms. Georges repeats and realleges paragraphs 1-90 as if fully set forth herein.

419.    The law is well-established that "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Byrd v. Clark, 783 F. 2d 1002, 1007 (11th Cir. 1986); see also Anderson v. Branen, 17 F. 3d 552, 557 (2d Cir. 1994) (citations omitted).

420.    Therefore, at all times material hereto Deputy Abreu had an affirmative duty to protect the Plaintiffs from constitutional violations by fellow officers.

421. Deputy Abreu witnessed, permitted, or authorized the unconstitutional conduct of Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Sergeant Cooper, Deputy Elrod, Deputy Hernandez, and Deputy Williams.

422. Deputy Abreu witnessed, permitted, or authorized the unlawful entries into Ms. Georges' House that were executed by Deputy Sudman, Deputy Hamel, Deputy Gonzalez, Sergeant Cooper, Deputy Elrod, Deputy Hernandez, and Deputy Williams.

423. Deputy Abreu witnessed, permitted, or authorized the false arrest and malicious prosecution executed by Deputy Sudman and Deputy Hamel.

424. Deputy Abreu witnessed, permitted, or authorized the excessive force used on Ms. Georges by Deputy Sudman, Deputy Hamel, and Deputy Gonzalez.

425. Deputy Abreu witnessed, permitted, or authorized the batteries committed by Deputy Sudman, Deputy Hamel, and Deputy Gonzalez.

426. Deputy Abreu was present and had a reasonable opportunity to intervene to stop the fellow officers from attacking Ms. Georges or violating her constitutional rights.

427. Despite this opportunity, Deputy Abreu never intervened to prevent, or attempted to prevent, any of the unconstitutional conduct committed by Deputy Abreu, Deputy Hamel, Deputy Gonzalez, Sergeant Cooper, Deputy Elrod, Deputy Hernandez, and Deputy Williams.

428. As a direct and proximate result of Deputy Abreu's failure to intervene, Ms. Georges' suffered extensive damages, including pain and suffering, physical injuries, monetary loss, loss of liberty, and severe emotional and psychological distress.

WHEREFORE, Plaintiff Carmelle Georges demands judgment individually against Deputy Abreu for actual and compensatory damages; for punitive damages; and prays for an order

awarding her reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §1988 and any other applicable law.

## DEMAND FOR JURY TRIAL

The Plaintiff, Carmelle Georges, hereby demands trial by jury as to each cause of action and claim set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, Carmelle Georges, prays for judgement against the defendants listed herein and claims damages in excess of SEVENTY-FIVE THOUSAND ($75,000) DOLLARS, together with costs.

Dated this **22nd** day of **December, 2022**.

KRUPNICK CAMPBELL MALONE
BUSER SLAMA HANCOCK, PA
Counsel for **Plaintiff**
12 S.E. 7th Street, Suite 801
Fort Lauderdale, Florida  33301
(954)763-8181 telephone
(954)763-8292 fax

BY:   **/s/ Christopher W. Royer**
JOSEPH J. SLAMA, ESQUIRE
Florida Bar No:  476171
CHRISTOPHER W. ROYER, ESQUIRE
Florida Bar No:  139981
Pleadings-JJS@krupnicklaw.com